## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ADETAYO AGBOKE,
              Appellant,

      v.

DEPARTMENT OF JUSTICE,
              Agency.

DOCKET NUMBER
SF-1221-18-0106-W-1

DATE: April 17, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Adetayo Agboke</u>, Long Beach, California, pro se.

<u>Gregory Baruch</u>, Esquire, <u>Paul W. Bridenhagen</u>, Esquire, and <u>Sarah Bishop</u>, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to clarify that the appellant's claims arising from Complaint 1 (MA-17-2480) with the Office of Special Counsel (OSC) are dismissed as untimely filed, we AFFIRM the initial decision.

## BACKGROUND

OSC complaints.

The appellant was an Auditor (Bankruptcy), GS-0511-14, in the Los Angeles office within Region 16 of the U.S. Trustee Program (USTP). Initial Appeal File (IAF), Tab 1 at 7. His immediate supervisor was the Assistant U.S. Trustee (AUST) for the Los Angeles Office, and his second-level supervisor was the U.S. Trustee (UST) for Region 16. IAF, Tab 15 at 4.

During the period at issue in this appeal, the appellant filed four complaints with OSC. In Complaint 1 (MA-17-2480), the appellant claimed that the agency retaliated against him for filing a June 17, 2016 grievance in which he contended that the AUST had used false information to determine his 2015-2016 performance appraisal rating. IAF, Tab 20 at 7, Tab 23 at 113-17. He alleged before OSC that, since the filing of the grievance, the AUST had engaged in racist and biased behavior, blamed him for her own errors, used abusive language, and applied rules unevenly. IAF, Tab 20 at 7. The appellant also referred to the

agency's denial of his request for situational telework and a February 22, 2017 letter of reprimand (LOR) issued by the UST. *Id*.; IAF, Tab 6 at 45-48. On June 8, 2017, OSC notified the appellant of its final determination to close its file. IAF, Tab 20 at 6.

In Complaint 2 (MA-17-5458), the appellant claimed that the agency's August 30, 2017 proposal to suspend him for 7 days[2] was in retaliation for, among other things, an August 29, 2017 equal employment opportunity (EEO) complaint. IAF, Tab 6 at 54-59, Tab 20 at 24-31. He stated that, on August 3, 2017, he advised the AUST and the UST of ongoing discrimination and bias on the part of the AUST, and that, on August 29, 2017, he told the AUST and UST that he "would not be acquiescing to any discriminatory employment practices." IAF, Tab 20 at 27, 29. According to the appellant, the UST then came to his office, physically blocked him from leaving, and insisted on discussing the allegations. *Id*. at 28-29. The appellant further related that, on August 29, 2017, following the meeting with the UST, he notified the director of USTP of his intent to file an EEO complaint, and also contacted the agency's EEO office. *Id*. He asserted that the notice of proposed suspension, which the UST issued the following day, was part of a "pattern and practice of retaliation," and that the notice improperly referenced the LOR—which, according to the appellant, had been rescinded as a result of his March 9, 2017 grievance contesting the LOR. *Id*.; IAF, Tab 16 at 85-87. The appellant further stated that, on April 20, 2017, he advised the AUST that his performance rating for 2015-2016 was based on incorrect information, and he alleged that the proposed suspension was "part of a retaliation pattern" for filing the June 17, 2016 grievance of that performance

---

[2] In the proposed suspension, the agency alleged that, on or about August 9, 2017, the appellant engaged in unprofessional conduct during an email exchange with the AUST in which the appellant refused her request to place an email into the trustee file. IAF, Tab 6 at 54-55, Tab 16 at 10-13. The proposal also alleged that, on August 2, 2017, the appellant engaged in another unprofessional email exchange with the AUST concerning her request that he refrain from sending emails to employees of a law firm representing the debtor in a particular case. IAF, Tab 6 at 55-56, Tab 16 at 14-35.

rating. IAF, Tab 20 at 28-29. He also referred to communications with the AUST and the UST in which he told them that he would not be "subject to rules exclusively applied to [him]," and that he would not perform duties outside his job description, in particular, a request by the AUST to file an email. *Id*.

In a September 28, 2017 email, OSC informed the appellant that the case had been closed because OSC defers claims of race discrimination to the EEO process. *Id*. at 23. The appellant objected that his complaint was not based entirely on alleged discrimination, and, later that day, OSC agreed to open a new complaint (Complaint 3) to investigate his allegations that the proposed suspension was the result of retaliation for his protected grievance activity. *Id*. at 32-37. The appellant states that he did not receive a formal closure letter for Complaint 2. Petition for Review (PFR) File, Tab 1 at 6.

Complaint 3 was assigned case number MA-17-5869. IAF, Tab 20 at 38. On November 14, 2017, OSC notified the appellant that it had terminated its inquiry into Complaint 3 and advised him of his right to seek corrective action with the Board. *Id*. at 38-40. In the closure letter, OSC clarified that the appellant had alleged that the agency issued the August 30, 2017 notice of proposed suspension in retaliation for the grievances he filed on June 17, 2016, and March 9, 2017. *Id*. at 38.

In Complaint 4 (MA-18-1924), filed on December 22, 2017, the appellant raised new claims of whistleblowing reprisal. *Id*. at 42-55. Specifically, he alleged that he made protected disclosures when (1) on August 24, 2017, he disclosed to the UST that a trial attorney in USTP improperly closed a case despite evidence of bankruptcy fraud; and (2) on November 20, 2017, he reported to the agency's Office of Inspector General that the UST failed to properly handle evidence of bankruptcy fraud. *Id*. at 49. He alleged that the agency retaliated against him for those disclosures when (1) on December 15, 2017, it denied him access to his office and forced him to telework indefinitely; and (2) on December 17, 2017, it issued a Standard Form 50 reflecting a 7-day suspension

when the decision to suspend him was not yet final. *Id*. at 46. It is unclear if or when OSC terminated its investigation into Complaint 4, and the appellant states that he does not intend that complaint to serve as basis for his appeal. PFR File, Tab 1 at 4-6.

Board proceedings.

On November 26, 2017, prior to the filing of Complaint 4, the appellant filed the instant IRA appeal. IAF, Tab 1. The administrative judge issued an order advising the appellant of the applicable standards and burdens of proof and providing him an opportunity to submit evidence and argument establishing jurisdiction over his appeal. IAF, Tab 3. The appellant filed a response, but did not at that time provide evidence that he had exhausted the OSC complaint process. IAF, Tab 6. The agency moved to dismiss the appeal for lack of jurisdiction. IAF, Tab 15. The administrative judge then issued a second jurisdictional order, providing the appellant an opportunity to demonstrate that he had exhausted his remedies with OSC. IAF, Tab 19. In response, the appellant submitted documents relating to all four OSC complaints. IAF, Tab 20.

On March 22, 2018, the administrative judge issued another order, advising the appellant that Complaint 1 appeared to be untimely, as he had received a closure letter for that complaint on June 8, 2017, more than 65 days before the IRA appeal was filed. IAF, Tab 20 at 6, Tab 21. The administrative judge also ruled that the appellant had not as yet exhausted his remedies with respect to Complaint 4, which was still open with OSC and less than 120 days old, and that she would not consider the matters raised in that complaint as part of the pending IRA appeal. IAF, Tab 21. The administrative judge provided the parties additional time to respond to the issue and noted that the record on timeliness would close on April 30, 2018. *Id*. Both parties responded to the order. IAF, Tabs 21-28, 30-43.

On June 1, 2018, the administrative judge issued an initial decision dismissing the appeal without a hearing. IAF, Tab 45, Initial Decision (ID).

Regarding Complaint 1, she found that the appellant had failed to timely seek corrective action with the Board. ID at 9-10. Regarding Complaints 2 and 3, the administrative judge found that the appellant exhausted his remedy with OSC concerning his allegation that the June 17, 2016 and March 9, 2017 grievances were a contributing factor in the August 30, 2017 notice of proposed suspension. ID at 12. However, the administrative judge found that the appellant failed to make a nonfrivolous allegation that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i). ID at 12-17. Finally, the administrative judge found that the appellant had not as yet exhausted his remedies with respect to Complaint 4, but advised him that, if he wished to file an IRA appeal based on Complaint 4, he could do so within 65 days of receipt of a closure letter from OSC, or after 120 days had elapsed since he initiated the complaint. ID at 17-18. Accordingly, the administrative judge dismissed the appeal without a hearing. ID at 1, 18-19.

On petition for review, the appellant argues that the administrative judge failed to consider his performance record; that she erred in treating Complaint 4 as a basis for his appeal; that she did not consider evidence and argument concerning the closure of Complaint 2 and the opening of Complaint 3, and erroneously referenced a closure letter in Complaint 2 that was never issued; that the agency's response to the jurisdictional order was late; that the administrative judge failed to consider evidence that the agency committed harmful error and denied him due process when it considered the ROI as prior discipline in proposing the 7-day suspension; that she erred in finding that his disclosures of alleged wrongdoing by the AUST and the UST were not protected; that he made protected disclosures that trial attorneys violated 28 U.S.C. § 586(f)(2)(B) in failing to act on evidence of bankruptcy fraud; and that the agency engaged in additional unlawful conduct subsequent to the initial decision. PFR File, Tab 1 at 4-15. The agency has filed a response, to which the appellant has replied. PFR File, Tabs 6-7.

**ANALYSIS**

The appellant's claims arising from Complaint 1 are dismissed as untimely filed.

Under 5 U.S.C. § 1214(a)(3)(A), if OSC notifies an appellant that its investigation into a complaint of whistleblowing reprisal has been terminated, he may file an IRA appeal with the Board provided that no more than 60 days have elapsed since notice of the termination was provided. Under the Board's regulations implementing that statutory time limit, an IRA appeal must be filed no later than 65 days after the date that OSC's written notice of termination is issued or, if the appellant shows that the notification was received more than 5 days after the date of issuance, within 60 days after receipt of the notice. 5 C.F.R. § 1209.5(a)(1). In this case, OSC issued its closure letter for Complaint 1 on June 8, 2017, and the appellant has not alleged that he received it more than 5 days later. IAF, Tab 20 at 6. Consequently, the deadline for filing an IRA appeal based on the claims at issue in Complaint 1 was August 14, 2017. *See* 5 C.F.R. § 1201.23 (providing that, if the day that would ordinarily be the last day for filing falls on a weekend or holiday, the filing period will include the first workday after that date). The appellant filed the instant appeal on November 26, 2017, more than 3 months after the deadline. IAF, Tab 1.

Unlike the Board's regulatory time limits for appeals filed under 5 U.S.C. § 7701, the statutory time limit for filing an IRA appeal cannot be waived for good cause shown because there is no statutory mechanism for doing so. *See Heimberger v. Department of Commerce*, 121 M.S.P.R. 10, ¶ 9 (2014). However, the filing deadline may be subject to equitable tolling, in which the filing period is suspended for equitable reasons, such as when the complainant has actively pursued his judicial remedies by filing a defective pleading within the statutory period, or when he has been induced or tricked by his adversary's misconduct into allowing the deadline to pass. *Id*., ¶ 10; *see* 5 C.F.R. § 1209.5(b). Equitable tolling is a rare remedy that is to be applied in unusual circumstances and generally requires a showing that the litigant has been

pursuing his rights diligently and some extraordinary circumstances stood in his way. *Heimberger*, 121 M.S.P.R. 10, ¶ 10.

In her March 22, 2018 show cause order on timeliness, the administrative judge did not mention the doctrine of equitable tolling. IAF, Tab 21. However, the agency did raise the equitable tolling issue and describe the applicable legal framework in its April 30, 2018 response to the order. IAF, Tab 29 at 5-7. This was sufficient to put the appellant on notice of the doctrine of equitable tolling and the circumstances in which it applies. *Cf. Yost v. Department of Health and Human Services*, 85 M.S.P.R. 273, 277 (2000) (holding that an administrative judge's failure to provide notice of jurisdictional requirements may not be prejudicial if the agency's motion to dismiss places the appellant on notice of what he has to allege to establish jurisdiction), *aff'd*, 4 F. App'x 900 (Fed. Cir. 2001). Although the record on timeliness was scheduled to expire that same day, IAF, Tab 21 at 2, the appellant continued to file supplemental responses to the March 22, 2018 order, IAF, Tabs 30-43, and the administrative judge considered those responses, ID at 7 n.2. Under these circumstances, we find that the appellant received a fair opportunity to present evidence and argument in support of equitable tolling.

In his responses to the timeliness order, the appellant alleged that, during the period between the June 8, 2017 closure letter for Complaint 1 and the August 14, 2017 deadline, the agency engaged in misconduct that affected his ability to timely file an IRA appeal. IAF, Tab 22 at 6. In particular, he asserted that the misconduct involved retaliation for his disclosure of bankruptcy fraud in a particular case. *Id*. at 6-7; IAF, Tab 30 at 5. Although the administrative judge did not explicitly refer to the doctrine of equitable tolling in the initial decision, we agree with her finding that the appellant failed to explain how alleged misconduct would have prevented him from meeting the August 14, 2017 deadline. ID at 10. In other words, the appellant has not shown that there were circumstances, extraordinary or otherwise, that stood in the way of his filing a

timely appeal. Consequently, we find that the doctrine of equitable tolling does not operate to extend the filing deadline, and we affirm the dismissal of the claims raised in Complaint 1.

We note, however, that the initial decision contains language suggesting that the entire appeal was dismissed for lack of jurisdiction. ID at 1, 18-19. With respect to the claims arising from Complaint 1, the correct disposition is to dismiss those claims as untimely filed, without reaching the jurisdictional issue. *See Heimberger*, 121 M.S.P.R. 10, ¶ 13. We modify the initial decision accordingly.

<u>The administrative judge correctly dismissed the claims raised in Complaints 2 and 3 for lack of jurisdiction.</u>

To establish jurisdiction over an IRA appeal, an appellant must show that he exhausted his administrative remedies before OSC and make nonfrivolous allegations that (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined under 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. §§ 1214(a)(3), 1221(e)(1). Once an appellant establishes jurisdiction over his IRA appeal, he is entitled to a hearing on the merits of his claim. *Salerno*, 123 M.S.P.R. 230, ¶ 5. The Board's jurisdiction in an IRA appeal is limited to issues raised before OSC. *Ellison v. Merit Systems Protection* Board, 7 F.3d 1031, 1036 (Fed. Cir. 1993). Given our finding on timeliness as to Complaint 1, and the appellant's insistence that Complaint 4 is not a basis for this appeal, we consider only those claims that were raised in Complaints 2 and 3.

We agree with the administrative judge that, with respect to the claims raised in Complaints 2 and 3, the appellant did not make a nonfrivolous allegation of a protected disclosure. Protected disclosures include any disclosure of

information that the employee reasonably believes evidences a violation of any law, rule, or regulation; gross mismanagement; a gross waste of funds; an abuse of authority; or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8). A nonfrivolous allegation of a protected disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced a type of wrongdoing specified under 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The test for determining whether an employee had a reasonable belief that his disclosures revealed a type of wrongdoing listed under 5 U.S.C. § 2302(b)(8) is to inquire whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the Government evidence such wrongdoing. *Id.*

As the appellant correctly observes, the fact that an individual has engaged in activity under 5 U.S.C. § 2032(b)(9), such as filing a grievance or EEO complaint, does not preclude him from raising a claim under 5 U.S.C. § 2302(b)(8) if he made disclosures based on the same operative facts outside the (b)(9) activity. *Luecht v. Department of the Navy*, 87 M.S.P.R. 297, ¶ 10 (2000). Here, the appellant appears to have alleged that he made protected disclosures outside his grievance and EEO activity. IAF, Tab 20 at 27-29. Nonetheless, we agree with the administrative judge that the appellant failed to nonfrivolously allege that the disclosures he identified in Complaint 2 were protected.[3]

First, to the extent the appellant claims to have disclosed to the AUST, UST, and higher management that the AUST discriminated against him based on his race, alleged disclosures that an agency engaged in discrimination and created a hostile work environment in violation of Title VII are excluded from coverage under 5 U.S.C. § 2302(b)(8). *McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶ 22 (2008); *see Edwards v. Department of Labor*, 2022 MSPB

---

[3] Complaint 3 does not appear to allege retaliation for disclosures made outside the appellant's grievance activity. IAF, Tab 20 at 38.

9, ¶¶ 21-23 (clarifying that the Whistleblower Protection Enhancement Act of 2012 did not expand the scope of § 2302(b)(8) to include Title VII claims), *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023). As to the remaining alleged disclosures, the appellant appears to allege that he disclosed an abuse of authority on the part of the AUST. An abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons. *Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 11 (2011). For example, the Board has held that a supervisor's use of his influence to denigrate other staff members in an abusive manner and threaten the careers of staff members with whom he disagrees constitutes an abuse of authority. *Id*. With regard to the appellant's assertions that the AUST based his performance rating on erroneous information and improperly asked him to file an email, we find that the appellant failed to allege facts that, if proven, would show that a reasonable person would find that the AUST's actions evidenced such an arbitrary or capricious exercise of power, or any other type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). Finally, the appellant's alleged disclosure that he had been "subjected to rules exclusively applied to [him]," IAF, Tab 20 at 28, is too vague to constitute a nonfrivolous allegation of a protected disclosure, *see Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 17 (2006).

We also agree with the administrative judge that, with respect to the issues exhausted in Complaints 2 and 3, the appellant failed to make a nonfrivolous allegation that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). The appellant's grievances and EEO complaint constitute protected activity under 5 U.S.C. § 2302(b)(9)(A), which generally protects the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation. However, such activity falls within the scope of § 2302(b)(9)(A)(i) only if it is "with regard to remedying a violation of paragraph (8)." In other

words, the substance of the appeal, complaint, or grievance must itself concern a claim of retaliation for disclosures protected under § 2302(b)(8). *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013). Here, neither of the appellant's grievances involves a claim that he made a protected disclosure that was a contributing factor in a personnel action. IAF, Tab 6 at 116-18, Tab 16 at 76-78. Nor has the appellant alleged that he raised a claim of whistleblowing reprisal in his EEO complaint. Because the appellant's grievances and EEO complaint did not seek to remedy a violation of § 2302(b)(8), they constitute protected activity under § 2302(b)(9)(A)(ii), not § 2302(b)(9)(A)(i). As such, they do not support a finding of IRA jurisdiction. *See Mudd*, 120 M.S.P.R. 365, ¶ 7.

<u>The evidence submitted with the appellant's petition does not provide a basis for further review.</u>

In support of his petition, the appellant has attached approximately 800 pages of supporting exhibits. PFR File, Tab 1 at 16-321, Tabs 2-4. We note that it is not the Board's obligation to pore through the record to construe and make sense of allegations set forth at various parts of an extremely voluminous case file. *See Keefer v. Department of Agriculture*, 92 M.S.P.R. 476, ¶18 n.2 (2002) (citing *Embry v. Department of Transportation*, 13 M.S.P.R. 505, 507 (1982)). Nonetheless, we have examined the exhibits and find that they do not contain new and material evidence that would warrant further review. With regard to the documents that predate the close of the record on jurisdiction (March 9, 2018) and timeliness (April 30, 2018), we find that they do not qualify as new evidence because (1) the information contained therein is duplicative of submissions already contained in the record, *see Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989); or (2) the appellant has not shown that the information was unavailable before the close of the record despite his due diligence, *see Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). To the extent that documents postdating the close of the record contain new

information, this information concerns events that took place after the Board appeal was filed. Those matters could not have been exhausted in Complaints 2 or 3, nor could they have affected the timeliness of the appeal with respect to Complaint 1. As to Complaint 4, the appellant vehemently insists that his appeal is not based on that complaint.[4] PFR File, Tab 1 at 4-6. Thus, to the extent the appellant's evidence is new, it is not material to the outcome of this case.[5] *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

## NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[4] The appellant may file a separate IRA appeal based on Complaint 4 consistent with the Board's regulations and the applicable statutes. We make no finding here as to the timeliness of such an appeal.

[5] We have considered the appellant's remaining arguments and find they are either without merit or outside the scope of this appeal.

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012.** This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:
http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                     _____
                                   Gina K. Grippando
                                   Clerk of the Board
Washington, D.C.